Matter of Town of Cambria v New York Off. of Renewable Energy Siting (2024 NY Slip Op 03288)

Matter of Town of Cambria v New York Off. of Renewable Energy Siting

2024 NY Slip Op 03288

Decided on June 14, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 14, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., BANNISTER, MONTOUR, DELCONTE, AND HANNAH, JJ.

390 OP 23-01819

[*1]IN THE MATTER OF TOWN OF CAMBRIA, PETITIONER,
v
NEW YORK OFFICE OF RENEWABLE ENERGY SITING, NEW YORK STATE AND BEAR RIDGE SOLAR, LLC, RESPONDENTS. 

LIPPES MATHIAS LLP, BUFFALO (CARMEN A. VACCO OF COUNSEL), FOR PETITIONER.
LETITIA JAMES, ATTORNEY GENERAL, ALBANY (JOSHUA M. TALLENT OF COUNSEL), FOR RESPONDENTS NEW YORK OFFICE OF RENEWABLE ENERGY SITING AND NEW YORK STATE.
YOUNG/SOMMER, LLC, ALBANY (STEVEN D. WILSON OF COUNSEL), FOR RESPONDENT BEAR RIDGE SOLAR, LLC.
WISNIEWSKI LAW PLLC, WEBSTER (BENJAMIN E. WISNIEWSKI OF COUNSEL), FOR CAMBRIA OPPOSITION TO INDUSTRIAL SOLAR, INC., AMICUS CURIAE. 

 Proceeding pursuant to CPLR article 78 (initiated in the Appellate Division of the Supreme Court in the Fourth Judicial Department pursuant to Executive Law former § 94-c [5][g]) to annul and vacate a determination of respondent New York Office of Renewable Energy Siting. 
It is hereby ORDERED that the determination is unanimously confirmed without costs and the petition is dismissed.
Memorandum: Petitioner, Town of Cambria, commenced this original proceeding pursuant to CPLR article 78 and Executive Law former § 94-c (5) (g) after respondent New York Office of Renewable Energy Siting (ORES) issued a siting permit to respondent Bear Ridge Solar, LLC (Bear Ridge) for the construction of a 100-megawatt solar project (Facility). Petitioner sought, inter alia, to annul a determination that denied petitioner's request for full party status and an adjudicatory hearing and that confirmed the waiver of certain local laws of petitioner.
In June 2019, the legislature passed the New York Climate Leadership and Community Protection Act (CLCPA), which amended various laws, including the Environmental Conservation Law and Public Service Law, to address the dangers posed by climate change (see L 2019, ch 106). The CLCPA set forth a rigorous schedule to achieve zero emissions of electrical energy by 2040 (see Public Service Law § 66-p [2] [b]). The legislature also enacted the Accelerated Renewable Energy Growth and Community Benefit Act (AREGCBA) (see L 2020, ch 58, part JJJ), which directed respondent New York State (state) to "take appropriate action to ensure that . . . new renewable energy generation projects can be sited in a timely and cost-effective manner" (id. § 2 [2] [a]). The AREGCBA further required the state to provide "transmission infrastructure . . . to access and deliver renewable energy resources" to areas of the state where those resources are needed (id. § 2 [2] [b]).
As relevant here, AREGCBA added Executive Law former § 94-c (see L 2020, ch 58, part JJJ, § 4), which created ORES. ORES was tasked with providing "a coordinated and timely [*2]review of proposed major renewable energy facilities to meet the state's renewable energy goals while ensuring the protection of the environment and consideration of all pertinent social, economic and environmental factors" (Executive Law former § 94-c [1]). Mechanisms were established to override or waive certain local laws that were found to be "unreasonably burdensome" in light of the goals of the CLCPA and the environmental benefits of the proposed facility (Executive Law former § 94-c [5] [e]).
It is under that statutory and regulatory backdrop that Bear Ridge applied for a permit to construct the Facility, which Bear Ridge expected to "offset . . . more than 136,000 tons of carbon dioxide associated with greenhouse gas emissions." Although Bear Ridge's initial application stated that it had "designed the Facility to comply with all substantive local laws and ordinances to the greatest extent practicable," Bear Ridge sought, as relevant here, a waiver of certain provisions of petitioner's Local Law No. 1 of 2021 and Superseding Local Law No. 2 of 2017 (collectively, Solar Laws) on the ground that they were unreasonably burdensome.
After Bear Ridge supplemented its initial application per ORES's request, ORES determined that Bear Ridge's application complied with Executive Law former § 94-c (5) (a) and 19 NYCRR 900-4.1, and published a draft siting permit containing, inter alia, initial recommendations on whether various provisions of the Solar Laws should be waived. ORES also scheduled public hearings and set the deadlines for the submission of issue statements and petitions for party status. Thereafter, public hearings were held.
Petitioner filed a combined request for party status, issue statement, and statement of noncompliance. Petitioner argued that there were issues of fact whether the requested waivers were necessary, i.e., whether the relevant provisions of the Solar Laws were unreasonably burdensome, and that it was therefore entitled to full party status and an adjudicatory hearing. The determination denied petitioner's request for full party status and an adjudicatory hearing and ordered ORES to continue processing Bear Ridge's siting permit application. The determination stated that the issues raised by petitioner "concerning improper waiver of local laws or regulations, opposition to the project, or adherence to Executive Law [former] § 94-c or [19 NYCRR] Part 900 do not meet the standards for adjudication." The determination was affirmed by the Executive Director of ORES, and ORES issued a siting permit to Bear Ridge. Petitioner thereafter commenced the instant proceeding.
Petitioner contends that ORES arbitrarily denied its request for full party status and for an adjudicatory hearing because petitioner raised substantive and significant issues with respect to ORES's determination, i.e., whether certain provisions of the Solar Laws were unreasonably burdensome in light of the CLCPA targets and the alleged environmental benefits of the Facility. We reject that contention. The determination whether adjudicable issues exist that require a hearing is governed by Executive Law former § 94-c and 19 NYCRR 900-8.3. If any public comment on a draft permit condition, "including comments provided by a municipality . . . raises a substantive and significant issue, as defined in regulations adopted pursuant to this section, that requires adjudication, the office shall promptly fix a date for an adjudicatory hearing to hear arguments and consider evidence with respect thereto" (Executive Law former § 94-c [5] [d]; see 19 NYCRR 900-8.3 [b] [1], [5] [ii]). A "substantive issue" exists when "there is sufficient doubt about the applicant's ability to meet statutory or regulatory criteria applicable to the project, such that a reasonable person would inquire further" (19 NYCRR 900-8.3 [c] [2]). In determining whether a substantive issue exists, the administrative law judge (ALJ) "shall consider the proposed issue in light of the application and related documents, the standards and conditions, or siting permit, the statement of issues filed by the applicant, the content of any petitions filed for party status, the record of the issues determination and any subsequent written or oral arguments authorized by the ALJ" (id.). An issue is "significant" when "it has the potential to result in the denial of a siting permit, a major modification to the proposed project or the imposition of significant permit conditions in addition to those proposed in the draft permit, including uniform standards and conditions" (19 NYCRR 900-8.3 [c] [3]). Where an application, as proposed or as conditioned by the draft siting permit, is found by ORES to conform to the applicable law, the burden of establishing the existence of a substantive or significant issue is on the potential party raising such issue (see 19 NYCRR 900-8.3 [c] [4]). "Any party aggrieved by the issuance or denial of a permit under [Executive Law former § 94-c] may seek judicial review of such decision as provided in [former § 94-c [5] (g)]" (former § 94-c [5] [g]).
Here, contrary to petitioner's contention, ORES's determination that petitioner failed to raise a substantive and significant issue is supported by "substantial evidence in the record" (Executive Law former § 94-c [5] [g] [ii] [B]) and is not "[a]rbitrary, capricious or an abuse of discretion" (former § 94-c [5] [g] [ii] [E]; see Matter of Town of Ellery v New York State Dept. of Envtl. Conservation, 159 AD3d 1516, 1518 [4th Dept 2018]; Matter of Raritan Baykeeper, Inc. v Martens, 142 AD3d 1083, 1086 [2d Dept 2016]). Petitioner's contention is based on its assertion that Bear Ridge failed to establish in its application that the Facility would produce renewable solar energy that replaced fossil fuels rather than other renewable energy sources. According to petitioner, because Bear Ridge failed to demonstrate that the Facility would result in any environmental benefit, the applicable provisions of the Solar Law were not—and indeed, could not be—unreasonably burdensome "in view of the CLCPA targets and the environmental benefits of the proposed [Facility]" (former § 94-c [5] [e]). However, as noted, once ORES determined that the application, "as proposed or as conditioned by the draft siting permit, conform[ed] to all applicable requirements of statute and regulation, the burden of persuasion" shifted to petitioner to establish a significant and substantive issue (19 NYCRR 900-8.3 [c] [4]). Thus, it was up to petitioner to show that there is a significant and substantive issue whether the Facility would result in environmental benefits or further the CLCPA's targets. Petitioner failed to do so. Indeed, petitioner's evidence in support of its assertion consisted of New York Independent Systems Operation reports, which clearly establish that, although there are currently issues with the transmission of renewable energy generated in Western New York to downstate areas where it is needed, there is a state-wide effort to address those transmission issues.
Petitioner further contends that ORES failed to apply the regulatory framework, which requires facts and analysis to support the waiver of local laws, and instead granted the waivers with respect to certain provisions of the Solar Laws based upon Bear Ridge's "conclusory determinations" that the laws were burdensome and that the Facility created environmental benefits. We reject that contention. Bear Ridge supported its requests for waiver of certain provisions of the Solar Laws with evidence that the requirements would reduce the available acreage to such an extent that the project would not be feasible or that the necessary technology for compliance did not yet exist. Inasmuch as Bear Ridge's assertions were not conclusory, ORES's decision with respect to the waiver of certain Solar Laws was "in conformity with the . . . regulations" (Executive Law former § 94-c [5] [g] [ii] [A]) and was not arbitrary, capricious or an abuse of discretion (see former § 94-c [5] [g] [ii] [E]).
In addition, petitioner contends that ORES's determination to allow the waiver of certain decommissioning provisions of the Solar Laws was arbitrary and capricious. Specifically, petitioner asserted that Bear Ridge failed to provide any analysis of the cost to consumers of applying those laws. Unlike the waiver of the other provisions of the Solar Laws, the waiver of the decommissioning provisions was grounded in cost considerations. Thus, Bear Ridge was required to demonstrate "that the needs of consumers for the facility outweigh the impacts on the community that would result from refusal to apply the identified local substantive requirements" (19 NYCRR 900-2.25 [c] [3]). In support of its request for the waiver of the relevant decommissioning provisions, Bear Ridge explained that the cost of removing wires buried at depths greater than four feet would "translate into higher energy costs for consumers, as they will drive up the costs of building and operating solar facilities over their lifetimes," and that removal of wires buried at those depths would be burdensome and had been determined by the Department of Agriculture and Markets to be unnecessary. Further, Bear Ridge explained that, as relevant, the amount paid as security for decommissioning costs would increase from $5 million to $8.42 million, which would affect funding. We note that ORES determined that a 15% contingency was reasonable and that the security amount has to be regularly reevaluated. We conclude that Bear Ridge established that the "impacts to the community" of failing to require a greater amount of security to cover future decommissioning costs were minimal. Under these circumstances, we conclude that ORES's determination with respect to waiver of the relevant decommissioning provisions complied with the applicable regulations and was not arbitrary or capricious.
Petitioner's contention that ORES erred in failing to hold a non-adjudicatory public hearing after it denied petitioner's request for full party status is not reviewable by this Court inasmuch as petitioner failed to raise that issue in its administrative appeal and, therefore, failed to exhaust its administrative remedies (see Matter of Gullace v [*3]Schroeder, 215 AD3d 1297, 1298 [4th Dept 2023]; Matter of Coalition of Concerned Citizens v New York State Bd. on Elec. Generation Siting & the Envt., 199 AD3d 1310, 1314 [4th Dept 2021], appeal dismissed 37 NY3d 1168 [2022]; Matter of Cameron Transp. Corp. v New York State Dept. of Health, 197 AD3d 884, 887 [4th Dept 2021]).
Entered: June 14, 2024
Ann Dillon Flynn
Clerk of the Court